UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                                                 CRIMINAL ACTION NO. 3:08-CR-94-CRS

TIMOTHY TERRELL BALLANGER                                                            DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court for consideration of a motion of the defendant, Timothy Terrell Ballanger, *pro se*, seeking a reduction of his term of imprisonment due to poor health which has placed him in fear of serious illness or death from the COVID-19 virus (DN 58). The Court denied Ballanger's two earlier motion for compassionate release on May 4, 2020 (DN 54) and June 4, 2020 (DN 56) for failure to exhaust his administrative remedies. On January 19, 2021, Ballanger filed the instant motion, alleging that he has now exhausted his administrative remedies, attaching his initial request, his appeals, and the Bureau of Prison's ("BOP") responses denying him compassionate release (DNs 58-1, 58-2). The United States has responded, acknowledging that Ballanger has now exhausted his administrative remedies. The United States objects to the motion on the ground that Ballanger is not eligible for compassionate release as he has failed to identify an "extraordinary and compelling" reason warranting a sentence reduction. the merits (DN 60).

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[1] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[2] As of the date of this writing, there are 153,954,491 confirmed cases worldwide and 3,221,052 deaths; in the United States, there are 32,123,136 confirmed cases and 572,190 deaths.[3] Further elaboration concerning the seriousness of then COVID-19 pandemic is unnecessary. The health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons where outbreaks can result in catastrophe. However, the situation is rapidly evolving worldwide and we must therefore address each inmate's situation individually in the context currently presented when considering requests for compassionate relief. Suffice it to say that the Court addresses motions for compassionate release, and Ballanger's motion in particular here, with the gravity of the situation in mind.

Ballanger pleaded guilty and was sentenced in 2009 to serve 240-month in prison for possession of a firearm by a convicted felon, car-jacking, and brandishing a firearm during and in relation to a crime of violence. He is incarcerated at FCI Butner Low. The presentence reports indicated that Ballanger reported that he was healthy with no history of health problems at the time of sentencing. (DN 31). However, Ballanger alleges and the medical records reveal that he

---

[1] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who- director-general-s-openingremarks-at- the-media-briefing-on-covid-19--11-march-2020).

[2] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel- coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), *available at* https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

[3] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://covid19.who.int/ (last visited May 5, 2021).

has received treatment for a variety of medical and psychiatric conditions during his incarceration.

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115- 391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Ballanger has provided a copies of his path to exhaustion. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison.").  The United States does not contest exhaustion, but rather objects to the  motion solely on the merits. We will therefore find that Ballanger has exhausted his administrative remedies and we will proceed to consider the merits of his motion.

Ballanger's motion for compassionate release will be denied for the following substantive reasons.

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing

3

Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3, the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)** The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

By its own terms, § 1B1.13 applies only "[u]pon motion of the Director of the Bureau of Prisons." This policy statement has not been updated to reflect that defendants may now move the court for compassionate release. The United States Court of Appeals for the Sixth Circuit recently found that "§ 1B1.13 is not an 'applicable policy statement' for *defendant-filed* motions for compassionate release," (*United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) *citing United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), and thus it does not constrain the court's analysis of what constitutes extraordinary and compelling reasons for release. *Id*. We may turn to U.S.S.G. § 1B1.13, however, for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist in a given case that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Tomes*, 990 F.3d at 503; *Elias*, 984 F.3d at 519-520.

In his motion, Ballanger, now 51 years old, states:

The COVID-19 Pandemic is "extraordinary," compelling" and unprecedented." It presents a heightened risk of catastrophic health consequences to "medical [sic] vulnerable" inmates such as the Defendant who is classified as a BOP Care Level 3 "UNSTABLE" chronic inmate. [see Exhibit B]. Defendant suffers from five major chronic medical conditions that places [sic] him at a substantial risk of catastrophic health consequences if he infected with COVID-19. Those major medical conditions include but are not limited to the following: (1) Fibro-sarcoma Cancer (2) Chronic severe reactive airway disease ("Severe Asthma") (3) Ulcerative Colitis (4) sleep apnea (5) moderate obesity with BMI of 34.

DN 58, p. 2. The United States has responded that Ballager has "failed to provide any medical records or any evidence to substantiate his physical condition. Without providing some evidence of his medical condition, Mr. Ballanger fails to meet his burden," citing *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, *2 (M.D.Fla. June 7, 2019). DN 60, p. 6. In fact, Ballanger filed 425 pages of medical records on January 7, 2021, contemporaneously with his third motion for compassionate release. (DN 57). Despite this oversight, the United States is correct that Ballanger has failed to meet his burden to establish an "extraordinary and compelling" reason for compassionate release.

Ballanger asserts that he has a heightened risk of an adverse outcome or death should he contract COVID-19 while in prison due to his underlying medical conditions. While the risk of spread in prisons has been of grave concern over the many months that the pandemic has been raging on, we note that currently FCI Butner Low reports no positive cases of the coronavirus among the inmate population. There are 615 inmates housed there. The BOP reports that 2,273 inmates in the Butner Complex have now been fully vaccinated against the disease. (https://www.bop.gov). Thus, while Ballanger himself declined to receive the vaccine, those with whom he must come in contact are taking steps to prevent any further occurrence of the coronavirus in the prison.

Ballanger has received extensive and consistent medical attention as needed through the Butner Complex's medical center. (DN 57). The medical records provided by Ballanger are as current as December 2020 at which time he received another infusion of Entyvio, a drug for the treatment of moderate to severe ulcerative colitis. He has been receiving Entyvio infusions and a number of other medications for his colitis for an extended period of time. The records reflect that Ballanger was diagnosed with stage 1B low grade fibrosarcoma in 2014. The tumor was

resected and he received a course of radiation thereafter. He is being followed post-treatment for any recurrence. There is no evidence of active cancer in the recent medical records and Ballanger does not claim that he is experiencing active disease. He does claim that he is immune-compromised due to Entyvio treatments for his colitis and would be at high risk for serious illness or death should he contract COVID-19. He uses a CPAP machine provided for him by the medical center for his sleep apnea, has received respiratory therapy and medications for what Ballanger describes as Reactive Airway Disease.[4] Ballanger fears that this chronic condition which has caused chronic cough and difficulty breathing may become deadly should he contract COVID-19.

The defendant has provided evidence of a medical condition recognized by the CDC as enhancing the risk of an adverse outcome from COVID-19 as Entyvio is noted to render patients more prone to infections. It is less clear whether RAD falls under the CDC category for the types of chronic pulmonary disease which amplify risk, as it differs from asthma and COPD, both of which are specifically named by the CDC. In any event, we will consider Ballanger's RAD to also constitute a risk factor for adverse outcome from COVID-19 infection.

While Ballanger presents risk factor from chronic illness, there are presently no cases of COVID-19 at the facility. Thus Ballanger has failed to articulate an extraordinary and compelling reason for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i). There is zero risk that he will catch COVID-19 at the present time.

---

[4] Ballanger has not directed the Court to any particular medical records in the 425 pages he has provided. The Court's review located a record dated 12/03/2018 which indicates a physician's impressions that Ballanger's dry cough, which did not resolve was "Awaiting pulmonary evaluation. Likely RAD vs new onset asthma." DN 57-1, p. 25. We have not been provided down-to-date medical records, but we will accept Ballanger's statement that he has been diagnosed with this chronic illness.

7

Ballanger does not contend, nor could he successfully, that his sentence should be reduced because of his poor health alone. The Sentencing Commission identified terminal illness, or a serious physical, medical, or mental condition that substantially diminishes the ability of the defendant to provide self-care while incarcerated, and which is terminal or an otherwise permanent condition, as evidencing an "extraordinary and compelling" reason for a sentence reduction. While not directly applicable to a defendant's request for compassionate release, the severity of the impairments noted by the Commission to meet the "extraordinary and compelling" threshold suggests that something more than health conditions which are being successfully managed in the prison setting is required to clear this first hurdle. Ballanger has not alleged he suffers from a condition or combination of conditions that leave him impaired in daily functioning. While he has periodic trouble breathing, he is provided medications and an inhaler to combat symptoms. As noted earlier, Ballanger does not contend that he has active cancer. The only reason he claims to establish an extraordinary and compelling reason for compassionate release is that his medical conditions would increase his potential for an adverse outcome should he contract COVID-19. Thus his claim fails.

Additionally, even when a defendant is statutorily eligible for a sentence reduction based on extraordinary and compelling reasons, compassionate release is only appropriate after consideration of the factors set forth in 18 U.S.C. §3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g).

The United States urges under §3553(a)(1), that the nature and circumstances of Ballanger's crimes weigh against release and that he poses a very real danger if released from custody. It contends that his present sentence reflects the seriousness of Ballanger's crimes and will operate to deter him from the commission of future crimes. The Court agrees with the

8

United States that the present sentence meets the objectives of sentencing and that § 3553(a) factors counsel against reduction of Ballanger's sentence.

The following facts underly the conviction for which Ballenger is presently serving 240 months imprisonment:

> In late December of 2007, Timothy Terrell Ballanger approached a female victim, displayed a loaded pistol, and demanded her purse and 2001 Honda Civic. (DN 23, at p. 2). As a result, a federal grand jury in the Western District of Kentucky indicted Ballanger on three 2 counts: (1) felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(e)(1); (2) car-jacking a 2001 Honda Civic by force, violence, and intimidation in violation of 18 U.S.C. § 2119; and (3) using, carrying, and brandishing a firearm while carjacking the victim in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (DN 1). In June of 2009, Ballanger entered into a plea agreement with the United States. In exchange for Ballanger's guilty plea to all three charges in the indictment, the United States agreed to recommend a sentence at the lowest end of the guidelines range. (DN 23, at p. 9). The Presentence Investigation Report ("PSR") specified that Ballanger would be sentenced as an "Armed Career Criminal" under § 4B1.4(b)(3)(A) and 18 U.S.C. § 924(e) because he possessed a firearm in connection with a crime of violence and had at least three previous convictions for violent offenses. (DN 31, at p. 8). Ballanger's previous "crime of violence" convictions included Burglary I and Burglary III in Jefferson County and four counts of Robbery I, also in Jefferson County. (DN 1, at p. 1; DN 31 at pp. 9-10). Based on those considerations, the PSR recommended Ballanger serve "188-235 months plus 7 years to be served consecutively[,]" followed by 3-5 years of supervised release. (DN 31, at p. 19). At sentencing, the Court imposed a term of 180 months imprisonment as to Counts One and Two of the Indictment, to run concurrently, and a term of 60 months imprisonment as to Count Three, to run consecutively. (DN 30, at p. 3). Ballanger's total term of imprisonment is 240 months. *(Id.)*.

DN 39, pp. 1-2.

The nature and circumstances of the offense and his prior convictions for violent offenses militate against a sentence reduction and the danger posed to the community were he to be released appears great.

Ballanger has served 135 months of a 240-month sentence, 56% of his sentence. The BOP determined that, "although [he has] medical concerns, [he] is a MEDIUM risk recidivism level and

[has] past violent offenses. [He does] not meet the criteria for Compassionate Release." DN 58-2, p. 9. Ballanger stated that he is administratively appealing the Risk and Needs Assessment ("RNA") which determined his recidivism risk level, claiming that he received an erroneous score because the BOP did not include the programs he has completed. DN 58, p. 5. We have considered them here. He states that he has 90 months of outstanding work performance at Unicor/Federal Prison Industries. DN 58, p. 4. He also states that he has no disciplinary actions while incarcerated. *Id.* This was confirmed by the United States. DN 60, p. 2. Ballanger states that "the quality of the programs offered within the Federal Prisons, which the Defendant has taken every possible opportunity to completely change his life, to be a better law abiding citizen, and a productive member of society, which fulfill the goals of 18 USC 3553(a)(2)(b) 'Deterrence from criminal conduct' and 18 USC 3553(a)(2)(a) 'promote respect for the Law'." *Id.* The BOP records reflect nine courses completed between 2011 and 2019. In addition, he completed two drug education classes, one in 2012 and another in 2016. He also earned his GED while incarcerated. DN 58-3, p. 1.

This Court has repeatedly been advised by the United States Court of Appeals for the Sixth Circuit that post-sentence conduct is relevant to the Court's determination whether a reduction in sentence should be granted. *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020)(thorough renewed consideration of the § 3553(a) factors is required; court correctly included post-sentencing behavior as part of that inquiry); *United States v. Williams*, 972 F.3d 815 (6th Cir. 2020)(reversed and remanded because the Court failed to mention the defendant's argument regarding his post-conviction conduct); *United States v. Jenkins*, No. 20-5512 (6th Cir. Feb. 4, 2021)(Remanded for failure of the district court to mention defendant's post-sentence conduct in its explanation of its decision). While it remains wholly within the Court's discretion whether and to what extent to

reduce a sentence, the Sixth Circuit requires district courts to give a "complete review" to a motion for sentence reduction under the First Step Act.

Ballanger's good conduct in prison, completion of numerous programs, earning his GED, and his employment with Unicor evidence positive efforts which we find laudable. We note, too, that good conduct is expected and rewarded in the prison system. While the Court finds exemplary conduct in prison worthy of due consideration, we are very troubled by Ballanger's history of violent conduct and possession of weapons even after a felony conviction which, on balance, are not outweighed by his progress while incarcerated. His sentence was at the low end of the guidelines range by virtue of a plea agreement. His sentence reflects that he qualified as an armed career criminal at the time of sentencing. The United States has emphasized that his prior convictions include a robbery at gunpoint on a major road in Louisville, theft of a vehicle and money on four separate occasions by threat of use of a knife or gun, and the assault of a corrections officer during a prior incarceration where he struck the officer in the face.

We will accept at face value Ballanger's representation that he has endeavored to "completely change his life" and "to be a better law abiding citizen." We conclude, however, that in imposing sentence, the § 3553(a) sentencing factors were thoroughly and carefully considered, including, among other things, the serious nature of the offenses which involved car-jacking and brandishing a firearm during that crime, and again possessing a firearm as a convicted felon. These are charges to which Ballanger pleaded guilty. Considering the seriousness of the crimes and taking into account Ballanger's history and characteristics, this Court found that a sentence of 240 months imprisonment was sufficient but not greater than necessary to promote respect for the law, to reflect the seriousness of the offense, to deter future criminal conduct, to protect the public, and to serve as just punishment for the offense. The Court has revisited these factors and finds nothing

to call into question the initial determination of the appropriate sentence. The Court finds at this juncture, with the defendant having served slightly more than half the imposed sentence, that a reduction in sentence would undermine the carefully balanced sentencing factors which are served by the 240-month sentence imposed. Further, while he has behaved admirably thus far in prison and has been self-motivated to improve himself, we do not find that these factors justify a reduction in light of the need to promote respect for the law. Ballanger's numerous prior convictions for violent crimes did not yield law-abiding conduct as he ended up before this Court in 2007 for violent crimes again. The defendant's good conduct in prison and wake-up call to redirect his attentions toward law-abiding behavior may suggest the efficacy and appropriateness of the sentence. His representation that he has a plan for himself upon release from incarceration, while not verified, shows a planful approach by this defendant which the Court hopes will serve him well after service of his sentence. The Court finds no ground to justify a reduction in Ballanger's sentence.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Timothy Terrell Ballanger, for compassionate release (DN 58) is **DENIED.**

**IT IS SO ORDERED.**

cc: Counsel of Record
Timothy Terrell Ballanger, *pro se*
Reg. #05097-033
FCC Butner Low
Durham B Housing Unit
P.O. Box 999
Butner, NC 27509

May 13, 2021

Charles R. Simpson III, Senior Judge
United States District Court